UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HOWARD GREENBERG AND DENISE GREENBERG, INDIVIDUALLY AND AS GUARDIANS OF THEIR CHILD, J.G., <br><br> Plaintiffs, <br><br> vs. <br><br> DEPARTMENT OF EDUCATION OF THE STATE OF HAWAII, THE, CHRISTINA KISHIMOTO, SUPERINTENDENT OF HAWAII SCHOOLS; <br><br> Defendants. | CIV. NO. 21-00425 LEK-KJM |

**ORDER DENYING PLAINTIFFS' APPEAL AND AFFIRMING
THE ADMINISTRATIVE HEARING OFFICER'S ORDER**

On October 27, 2021, Plaintiffs Howard Greenberg and Denise Greenberg ("Parents"), individually and on behalf of their child J.G. ("Student" and collectively "Plaintiffs" or "Petitioners"), filed their Complaint, [dkt. no. 1,] in which they appeal Administrative Hearing Officer Chastity T. Imamura's ("Hearings Officer" or "AHO") October 12, 2021 Order Denying Petitioners' Motion to Enforce Stay-Put ("10/12/21 Order" and "Appeal"). The Hearing Officer issued the 10/12/21 Order after conducting a hearing on October 6, 2021. [Administrative Record on Appeal ("AR"), filed 11/5/21 (dkt.

no. 6), at 206 (dkt. no. 6-14 at PageID #: 246).[1]]  The Hearing Officer ultimately concluded that "Student's current educational placement is at [a public separate facility ('PSF')] where Student was placed in the March 2017 [Individualized Educational Program ('IEP')]."  [Order, AR at 213 (dkt. no. 6-14 at PageID #: 253).]

Plaintiffs' Opening Brief was filed on February 21, 2022.  [Dkt. no. 19.]  Defendants Department of Education, State of Hawai`i ("DOE") and Christine Kishimoto, in her official capacity as Superintendent of the State Department of Education (collectively "Defendants" or "Respondents"), filed their Answering Brief on April 7, 2022, and Plaintiffs filed their Reply Brief on April 25, 2022.  [Dkt. nos. 21, 22.]  The Court heard oral argument in this matter on May 20, 2022.  See Minutes, filed 5/20/22 (dkt. no. 23).  For the reasons set forth below, Plaintiffs' Appeal is denied and the Hearing Officer's 10/12/21 Order is affirmed.

## BACKGROUND

Plaintiffs filed their Motion to Enforce Stay Put on September 22, 2021 with the State of Hawai`i Office of Dispute Resolution, Department of the Attorney General, "seeking an order naming Student's stay-put placement at the Maui Autism

---

[1] The 10/12/21 Order is AR pages 205-13.  [Dkt. no. 6-14 at PageID #: 245-53.]

2

Center (hereinafter 'MAC')." See 10/12/21 Order, AR at 205 (dkt. no. 6-14 at PageID #: 245); see also Motion to Enforce Stay Put, AR at 48-56 (dkt. no. 6-9 at PageID #: 83-91.  The Hearing Officer found that "Student is eligible for special education and related services under the Individuals with Disabilities Educational Act (hereinafter 'IDEA')," 20 U.S.C. § 1400, et seq., 34 C.F.R. § 300.1, et seq., and Haw. Admin. R. § 8-60-1, et seq.  [10/21/21 Order, AR at 206 (dkt. no. 6-14 at PageID #: 246).]

At the time the 10/12/21 Order was issued, Student was eighteen.  Student started attending the MAC in October 2009. An IEP was prepared for Student in February 2016 that stated his educational placement was a private separate facility, and the location of services was the MAC.  In March 2017, a new IEP was prepared for Student that stated he was to be placed at a PSF. [Id. at 207 (dkt. no. 6-14 at PageID # 247).]  "Parents, on behalf of Student, filed a request for due process complaint in May 2017 to challenge" Student's placement at a PSF.  [Id.]  A hearing was held, and Administrative Hearings Officer Rowena Somerville ("Somerville") "determined that the IEP prepared for Student constituted a free appropriate public education [('FAPE')] and that Student's placement at the PSF was the appropriate least restrictive environment for Student."  [Id.] Plaintiffs appealed that decision to the United States District

3

Court for the District of Hawai`i, and the district court affirmed the decision that Student's appropriate placement was at the PSF.  Plaintiffs appealed the district court's decision to the Ninth Circuit, and the Ninth Circuit affirmed the district court's decision.  [Id.[2]]  Plaintiffs "applied for *writ of certiorari* to the U.S. Supreme Court, and that was denied on January 27, 2020 . . . ."  [Id. at 208 (dkt. no. 6-14 at PageID #: 248).[3]]

From May 2017 until January 27, 2020, "Student's stay put placement was at MAC, as that was Student's placement for Student's last implemented IEP prior to the March 2017 IEP."  [Id.]  "No new IEP was developed or implemented during the pendency of the litigation regarding the 2017 IEP."  [Id.]  In April 2020, Plaintiffs filed another request for due process hearing, alleging Defendants denied Student a FAPE by failing to develop an IEP and terminating payment for Student's enrollment at MAC.  Through "various settlement agreements reached by the parties, Respondents continued to pay for Student's education and related expenses until March 2021, when Respondents learned

---

[2] The district court's order is available at 2018 WL 3744015, and the Ninth Circuit's memorandum disposition is available at 772 F. App'x 567.

[3] The denial of certiorari is noted at 140 S. Ct. 957.

that Student was no longer attending MAC due to Student's medical condition."  [Id.]

On June 29, 2021, an IEP was completed for Student without the presence of Plaintiffs.  On July 15, 2021, Plaintiffs filed a complaint requesting a due process hearing.  Plaintiffs filed an amended complaint on August 11, 2021.  See id. at 208-09 (dkt. no. 6-14 at PageID #: 248-49).  The Hearing Officer assessed "Student's 'then-current educational placement' to determine whether Student would be entitled to stay at MAC during the pendency of th[e] proceeding at Respondents' expense."  [Id. at 209 (dkt. no. 6-14 at PageID #: 249).]  The Hearing Officer found

> that Student's current educational placement is the PSF where Student was placed in the March 2017 IEP.  Petitioners' unilateral placement of Student at MAC after the May 2017 litigation concluded does not constitute Student's stay put placement and any settlement agreements by Respondents to continue payments for Student's tuition while the IEP development was pending similarly does not change Student's placement for stay-put purposes.

[Id. at 213 (dkt. no. 6-14 at PageID #: 253).]

"Plaintiffs seek to overturn and vacate AHO Imamura's [10/12/21 Order] in which she found that Plaintiffs were not eligible for an automatic preliminary injunction protecting their child's rights to remain [at MAC] . . . ."  [Complaint at ¶ 2.]

5

## **STANDARD**

The Ninth Circuit has held that "a stay-put order is appealable under the collateral order doctrine, because it conclusively determines the disputed question of the child's stay-put location, resolves an important issue completely separate from the merits of the child's ultimate placement, and is effectively unreviewable on appeal from a final judgment." A.D. ex rel. L.D. v. Hawai`i Dep't of Educ., 727 F.3d 911, 913 (9th Cir. 2013) (citation and internal quotation marks).

## **DISCUSSION**

### I.   **Relevant IDEA Framework**

> Under IDEA, a child **must** receive a "'free appropriate public education[, or FAPE,] that emphasizes special education and related services designed to meet [the child's] unique needs and prepare them for employment and independent living.' IDEA accomplishes this goal by funding state and local agencies that comply with its goals and procedures." Johnson ex rel. Johnson v. Special Educ. Hearing Off., 287 F.3d 1176, 1178 (9th Cir. 2002) (per curiam) (quoting 20 U.S.C. § 1400(d)(1)(A)). Each child covered by IDEA receives an IEP that "addresses: (1) the child's goals and objectives, (2) the educational services to be provided, and (3) an objective method of evaluating the child's progress." Id.

E.E. v. Norris Sch. Dist., 4 F.4th 866, 869 (9th Cir. 2021) (alterations and emphasis in E.E.). IDEA contains a stay-put provision that states that, "during the pendency of any proceedings conducted pursuant to this section, unless the State

6

or local educational agency and the parents otherwise agree, **the child shall remain in the then-current educational placement of the child** . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j) (emphasis added).  In analyzing the meaning of "then-current educational placement," the Ninth Circuit has stated:

> We have recognized that "[t]he reading most consistent with the ordinary meaning of the phrase suggests that the 'then-current educational placement' refers to the educational setting in which the student is actually enrolled at the time the parents request a due process hearing to challenge a proposed change in the child's educational placement." N.E. ex rel. C.E. v. Seattle Sch. Dist., 842 F.3d 1093, 1096 (9th Cir. 2016).  Educational placement is defined as "the general educational program of the student." N.D. v. Haw. Dep't of Educ., 600 F.3d 1104, 1116 (9th Cir. 2010).  Specifically, this court has "interpreted 'current educational placement' to mean 'the placement set forth in the child's last implemented IEP.'" K.D. ex rel. C.L. v. Dep't of Educ., 665 F.3d 1110, 1118 (9th Cir. 2011) (quotation omitted); accord L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 911 (9th Cir. 2009); Johnson ex rel. Johnson, 287 F.3d at 1180.  While the statute uses the term "educational placement" instead of IEP, "the purpose of an IEP is to embody the services and educational placement or placements that are planned for the child." N.E. ex rel. C.E., 842 F.3d at 1096.

E.E., 4 F.4th at 871 (alteration in E.E.).

> Where a parent unilaterally changes the placement of a child, but a subsequent administrative or judicial decision confirms that the parental placement is appropriate, the decision "constitute[s] an agreement by the State to the change of placement" and the placement becomes

7

> the "current educational placement" for the purposes of the stay put provision  See Clovis Unified Sch. Dist. v. California Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990) (citing [Sch. Comm. of Town of] Burlington[, Mass. v. Dep't of Educ.], 471 U.S. [359,] 372-73, 105 S. Ct. 1996 [(1985)]); see also L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 903 (9th Cir. 2009) ("Where the agency or the court has ruled on the appropriateness of the educational placement in the parents' favor, the school district is responsible for appropriate private education costs regardless of the outcome of an appeal.").  However, such a favorable decision for a parent must expressly find that the private placement was appropriate.  See L.M., 556 F.3d at 903-04 (finding that there was no implied "current educational placement" because the district court's ruling in favor of the parents was on procedural grounds and the court never adjudicated the appropriateness of the private placement).

K.D., 665 F.3d at 1118 (some alterations in K.D.).

## II. Stay-Put Provision Applied in the Instant Action

Plaintiffs assert MAC is Student's current educational placement because "[t]here has been no implemented IEP since the 2016 IEP placing [Student] at MAC."  [Opening Brief at 15.] Plaintiffs argue "[t]he AHO erred in finding that the 2017 IEP was student's 'then-current educational placement,' because that IEP placed the Student at a public separate facility," and "such a placement is no longer the appropriate placement for [Student]."  [Id. at 15-16.]  Defendants argue "implementation of the March [2017] IEP was not possible due to Plaintiffs' unilateral placement of Student at the MAC as well as

8

Plaintiffs' refusal to allow implementation of the IEP." [Answering Brief at 8-9.]  Moreover, Defendants assert the denial of the petition for *writ of certiorari* ended the litigation related to the March 2017 IEP, which made the December 20, 2017 decision by administrative hearing officer Somerville "a judicially sanctioned change of Student's educational placement from MAC to a PSF . . . ."  [Id. at 10.]

Plaintiffs, in arguing that Student's placement at the PSF is no longer the appropriate placement for Student, ask the Court to determine the merits of Plaintiffs' due process claim. Plaintiffs conflate the issues.  This Appeal only concerns the narrow issue of what Student's then-current educational placement was at the time Plaintiffs challenged the June 2021 IEP.  The Hearing Officer concluded that the PSF – not MAC – was Student's then-current educational placement.  The Court agrees.

Plaintiffs argue the MAC is the appropriate stay-put placement "because it is the educational setting where he is currently enrolled, and where he is receiving services."  [Reply Brief at 3.]  But, a student's current enrollment is not the determining factor in assessing the appropriate stay-put placement of a student.  If that were the case, then a student's parents could ignore an established IEP, enroll a student in the desired school, and keep the student enrolled there until the litigation arising from the due process request concluded.  In

9

effect, it would incentivize parents to litigate matters in the hope of keeping their child at the desired school because the stay-put provision would immediately grant the desired placement. "[S]uch a result . . . would undermine the cooperative process envisioned by the IDEA." N.E., 842 F.3d at 1097 (holding that "parents who disagree with a new IEP [cannot] wait until it is scheduled to take effect, pull their child out of school, and then request a due process hearing after the effective date of the new IEP" because it would allow them to "avail themselves of the stay-put mechanism to enforce the terms of a preferred old IEP during the course of the new school year while their due process challenge is litigated"). Plaintiffs' contention is therefore untenable.

   Although MAC was Student's then-current placement during the litigation concerning the March 2017 IEP, administrative hearing officer Somerville found that the PSF would be the least restrictive environment. See 10/12/21 Order, AR at 210 (dkt. no. 6-14 at PageID #: 250). That decision was affirmed by the district court and the Ninth Circuit, and the Supreme Court denied *certiorari*. See id. at 207-08 (dkt. no. 6-14 at PageID #: 247-48). After the litigation concerning the March 2017 IEP concluded, the March 2017 IEP "embod[ied] the services and educational placement or placements that [were] planned for [Student]." See N.E., 842 F.3d at 1096 (citation

10

omitted). It appears, however, that the March 2017 IEP was not implemented after the conclusion of the litigation because Plaintiffs unilaterally placed Student at MAC. See, e.g., 10/12/21 Order, AR at 211 (dkt. no. 6-14 at PageID #: 251). Plaintiffs' unilateral placement of Student at MAC, however, does not entail a finding that MAC is Student's stay-put placement. A unliteral change of placement can become the current educational placement of a student when "a subsequent administrative or judicial decision confirms that the parental placement is appropriate" because "the decision constitutes an agreement by the State to the change of placement . . . ." K.D., 665 F.3d at 1118 (alterations K.D.) (brackets, citations, and internal quotation marks omitted).

   Here, there was no subsequent administrative or judicial decision confirming Plaintiffs' placement of Student at MAC. Instead, there were previous judicial decisions finding that the PSF was Student's least restrictive environment. Plaintiffs argue Defendants gave "implied consent" to Student's placement at MAC because Defendants "fail[ed] to implement any IEPs during the four years since the 2017 [IEP] or to have a current alternative available to [Student] pursuant to statutorily compliant IEP." [Reply Brief at 9.] Plaintiffs, however, do not provide the full context of Student's IEP development.

11

For instance, Tracy Lui ("Lui") – who worked on Student's case as a District Education Specialist for DOE on the Island of Maui around October 2020 – stated that, while the March 2017 IEP "was the subject of litigation, the DOE made numerous requests to Petitioners to meet to revise Student's IEP or to re-evaluate Student, but Petitioners refused the DOE's requests to meet because of the ongoing litigation." [Respondents' Mem. in Opp. to Petitioners' Motion to Enforce Stay Put, Decl. of Tracy Lui ("Lui Decl.") ¶¶ 1, 7, AR at 76-77 (dkt. no. 6-12 at PageID #: 114-15).] Lui also stated that "[w]hen the litigation relating to the [March 2017] IEP concluded in late January 2020, the DOE continued its efforts to meet with Petitioners to revise Student's IEP, but again encountered resistance from Petitioners[.] . . ." [Id. ¶ 8, AR at 78 (dkt. no. 6-12 at PageID #: 116).] To resolve one of Plaintiffs' complaints, DOE "agreed to pay for two months of Student's attendance at MAC (April - May 2020), while the parties worked to complete Student's IEP." [Id. ¶ 10 (dkt. no. 6-12 at PageID #: 116).] Plaintiffs withdrew that complaint and "IEP meetings were held on April 22, 2020, May 13, 2020, May 27, 2020, and June 5, 2020, but the IEP was not yet completed." [Id. ¶¶ 11-12, AR at 78 (dkt. no. 6-12 at PageID #: 116).] Around October 20, 2020, Plaintiffs requested continued payment for Student's attendance at MAC because the

IEP was not yet completed. DOE told Plaintiffs that it "would continue to pay for Student's attendance at MAC while the parties were working in good faith to complete the IEP. The DOE continued to pay for Student's attendance at MAC until March 2021, when [DOE] learned that Student stopped attending MAC due to his medical condition." [Id. ¶ 18, AR at 79 (dkt. no. 6-12 at PageID #: 117).] During its negotiations with Plaintiffs, DOE told Plaintiffs that it was "not agreeing to place Student at MAC, nor [was] the DOE's agreement to pay for Student's attendance at MAC . . . an acknowledgment that MAC [was] an appropriate placement for Student, or that MAC [was] the appropriate stay-put placement for Student." [Id., Exh. B (emails between Anne T. Horiuchi and Eric A. Seitz, dated 6/24/20), AR at 87-88 (dkt. no. 6-12 at PageID #: 125-26).[4]]

From January 2021 to June 2021, more IEP meetings were attempted. See Lui Decl. at ¶¶ 20-32, AR at 80-82 (dkt. no. 6-12 at PageID #: 118-20). "Through May and June 2021, the DOE sent numerous communications to Petitioners requesting a meeting to complete Student's IEP." [Id. ¶ 32, AR at 82 (dkt. no. 6-12 at PageID #: 120).] However, Plaintiffs did not want IEP meetings to be set because of a pending due process complaint.

---

[4] Eric Seitz was Plaintiffs' counsel at that time, and Anne Horiuchi was a Deputy Attorney General representing the DOE. [Lui Decl. at ¶ 10, AR at 78 (dkt. no. 6-12 at PageID #: 116).]

13

See id. ¶ 33, AR at 82-83 (dkt. no. 6-12 at PageID #: 120-21). On June 28, 2021, DOE informed Plaintiffs of its "position regarding the necessity of completing Student's IEP, and again encouraged [them] to attend the IEP meeting scheduled for the next day." [Id. ¶ 34, AR at 83 (dkt. no. 6-12 at PageID #: 121).] Plaintiffs "did not attend the IEP meeting on June 29, 2021[,]" and DOE "completed Student's IEP that day." [Id. ¶ 35, AR at 83 (dkt. no. 6-12 at PageID #: 121).]

In light of these facts, the Court cannot infer that Defendants gave "implied consent," particularly when Defendants explicitly agreed to pay for Student's attendance at MAC while reserving the right to challenge Student's placement at MAC and contest MAC as Student's stay-put placement. See id., Exh. B, AR at 87-88 (dkt. no. 6-12 at PageID #: 125-26). The Hearing Officer stated that

> [t]o hold such agreements to pay against [Defendants] while attempting to complete Student's IEP would result in a detriment to all families and students who receive the benefit of supplemental payments from [Defendants] while trying to work to resolve any issues related to the students' programs. Conversely, it would also encourage parents to delay proceedings and meetings during the development of students' IEPs and continue to refuse to let [Defendants] implement valid IEPs for students simply to prolong the continued payment for private tuition.

[10/12/21 Order, AR at 211 (dkt. no. 6-14 at PageID #: 251).] The Court agrees with the Hearing Officer's reasoning.

14

Plaintiffs further argue the PSF is not the appropriate stay-put placement because, if it were, "[S]tudent would have to search out a new [PSF] that is appropriate for his needs" and "[h]e would not be attending either MAC or the DOE Public School currently sanctioned in the 6/29/21 IEP . . . ." [Opening Brief at 17-18.] Defendants contend that, "[r]egardless of whether Student's needs have changed, the stay-put provision does not contemplate the contested IEP or the merits of either party's position." Answering Brief at 14. Defendants are correct. Plaintiffs ask the Court to determine the merits of their due process challenge – *i.e.*, what placement is currently appropriate for Student. But, that is precisely what the Court cannot determine in this Appeal.

Finally, Plaintiffs argue "[t]he educational program in the 2017 IEP cannot be [Student's] 'then-current educational placement,' because it cannot be implemented without harming [Student] and causing a fundamental disruption of his educational program . . . ." [Reply Brief at 4.] The harm or disruption would occur, according to Plaintiffs, because the PSF is no longer "off-campus," which was a "central part of" Student's least restrictive environment. [Id. at 6.] Thus, Plaintiffs contend that "[a] transfer to a current location which is located on campus is a change in placement because it would 'significantly affect the child's learning experience'

15

because it eliminates a 'basic element' of the educational program." [Id. (quoting R.B. v. Mastery Charter Sch., Civ. 2:10-cv-06722 at *18–19 (E.D. Pa. Dec. 29, 2010)).] Plaintiffs' argument is not persuasive.

Plaintiffs primarily rely on N.D. v. Hawaii Department of Education, 600 F.3d 1104 (9th Cir. 2010), to support their argument, see Reply Brief at 4–5, but that case is inapposite. In N.D., the Ninth Circuit noted that "the motion [at issue before the district court was] for a preliminary injunction that affect[ed] a stay-put invocation, **not the stay-put invocation itself**." 600 F.3d at 1112 (emphasis added) (citing Johnson ex rel. Johnson v. Special Educ. Hearing Office, State of California, 287 F.3d 1176, 1180 (9th Cir. 2002) (per curium)). As such, the district court in N.D. "did not err in considering all factors of the preliminary injunction test." Id. (footnote omitted). This Appeal, however, only concerns a stay-put invocation and, therefore, the Court cannot assess the factors of the preliminary injunction test because "[a] motion for stay put functions as an **automatic** preliminary injunction. . . ." See Joshua A. v. Rock Unified Sch. Dist., 559 F.3d 1036, 1037 (9th Cir. 2009) (citation and internal quotation marks omitted). Plaintiffs then cite numerous cases from other circuits to support their contention that placing Student at the PSF outlined in the March 2017 IEP would be a fundamental disruption

16

of Student's educational program.  See Reply Brief at 5-7.  None of those cases are binding on the Court.  Regardless, those cases are unpersuasive because they do not address the precise issue presented in the instant Appeal.

To the extent that Plaintiffs argue placing Student in the PSF "would be akin to a complete disenrollment, because '[w]ith the behaviors he exhibits currently, he would not be able to access education on a larger public school campus, even with accommodations and modifications[,]'" Plaintiffs' argument fails.  See Reply Brief at 7 (some alterations in Reply Brief) (quoting ROA p. 159).  If Plaintiffs' concern is that the PSF is not Student's least restrictive environment, and that is why it cannot serve as Student's stay-put placement, then that logic applies to MAC with greater force.  MAC "was rejected because it [was] a **more** restrictive educational placement and special education should be delivered in the least restrictive environment."  [Prior Written Notice of Department Action dated 3/17/17, AR at 160 (dkt. no. 6-13 at PageID #: 199) (emphasis added).]  Accordingly, Plaintiffs fail to show that MAC is Student's stay-put placement.[5]

---

[5] Plaintiffs ask the Court to order Defendants to reimburse them for Student's placement at MAC during the pendency of this dispute.  See Opening Brief at 18-19.  The Court declines to address that issue because the only issue in the instant Appeal is the determination of Student's stay-put placement.  To the
(. . . continued)

17

**CONCLUSION**

On the basis of the foregoing, Plaintiffs' appeal of the Administrative Hearing Officer's October 12, 2021 Order Denying Petitioners' Motion to Enforce Stay-Put is HEREBY DENIED, and the 10/12/21 Order is HEREBY AFFIRMED. There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case on **August 11, 2022,** unless Plaintiff files a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 27, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**HOWARD GREENBERG, ET AL. VS. DEPARTMENT OF EDUCATION, ET AL; CV 21-00425 LEK-KJM; ORDER DENYING PLAINTIFFS' APPEAL AND AFFIRMING THE ADMINISTRATIVE HEARING OFFICER'S ORDER**

---

extent that Plaintiffs argue the Hearing Officer erred in failing to address reimbursement in the 10/12/21 Order, their argument fails.